**James BENJAMIN, et al., Plaintiffs,**

v.

**Benjamin J. MALCOLM,
et al., Defendants,**

**And Related Cases.**

**No. 75 Civ. 3073 (HB).**

United States District Court,
S.D. New York.

April 25, 1995.

John Boston, The Legal Aid Society Prisoners' Rights Project, New York City, for plaintiffs.

Thomas Bergdall, City of New York, New York City, for defendants.

## MEMORANDUM AND ORDER

BAER, District Judge.

### I.  BACKGROUND

This motion was brought by defendant New York City and argued before me on April 20, 1995.  The City seeks authorization to temporarily suspend its obligations arising from an order entered pursuant to various consent decrees entered by this and other courts in 1979 (collectively, "the decree"). The order required the City by March 31, 1995 to identify the location, owner, and developer of the site where the City will construct a production center to implement a food delivery system for its Department of Correctional Services.  While this issue has virtually taken on a life of its own and while some of that story paints a depressing picture, little constructive good can come from a detailed analysis of how the parties came to

be here on this motion today.  The life of this consent decree can only heighten one's sensitivity to the concept expressed by Confucius 2500 years ago that "litigation only continues conflict and offends nature; it does not heal." [1]

### II.  DISCUSSION

Defendant New York City makes this motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to modify the order of the Honorable Morris E. Lasker [2] entered on November 22, 1994, which required the City to designate by March 31, 1995 the site where it will construct the production center for its "cook/chill" food operation.  The "cook/chill" method had been chosen by the City as the method of choice to feed City prisoners.  The order was made pursuant to the court-ordered Food Service Work Plan dated June 14, 1991.  The "cook/chill" system involves preparing all food off the premises of the jails, chilling the food, and then simply reheating and serving it after it reaches the prisons.  This differs from the existing system, called "cook/serve," under which food is both prepared and served in the prisons. The parties had agreed that the cook/chill system would eliminate the persistent and pervasive sanitary problems encountered under the current system.  It would also resolve temperature problems that have resulted in food being served below health code requirements.  All concerned concluded that physically separating the preparation component of the prisons' food process from the prisons themselves would provide a cleaner and safer operation, which would also be more easily maintained.

The City's motion relies on Rule 60(b), which authorizes courts to order relief from judgments for "any ... reason justifying relief," including the circumstance where "it is no longer equitable that the judgment should have prospective application."  The City seeks a ninety-day extension during which time it promises to devise a less expensive

---

1.  Joseph I. Lieberman "Confucius's Lesson to Litigants."

2.  The parties, from the beginning of this litigation, have been privy to the expertise and judicial temperament of one of our wisest jurists, Judge Lasker.  He has asked me to undertake the balance of the work he undertook in 1975.  I will try to fill his far larger shoes.

yet adequate alternative to the cook/chill system. The City claims that the greatly increased cost of the cook/chill system, now estimated at between $348 and $378 million, juxtaposed with the City's "worsening" financial condition, warrant the opportunity for it to reconsider alternatives that will cost less but still meet the minimal requirements for food service in the City's jails. Plaintiffs, meanwhile, assert that the expected cost of the cook/chill program and the City's financial situation did *not* change significantly "in the last year, during which time defendants ... repeatedly reaffirmed their continuing commitment to cook/chill to the parties and the court." Pls.' Mem. of L. at 3–4.

I do not differ much with plaintiffs' assertion at oral argument that the City is attempting to "wiggle" out of its obligations under the consent decree. I find, however, that ordering the City to plunge ahead with "cook/chill" might impair not only the City's finances but perhaps the intended beneficiaries of the decree itself: a less expensive food preparation system may require less investment, take less time, and prevent decreases in discretionary areas of prison funding.

## III. CONCLUSION

For the reasons stated above, and as indicated at oral argument, I grant the City fifty-six days in which to evaluate its less expensive alternatives. This relief is contingent on the City meeting weekly on seven occasions or more beginning April 27, 1995 with a representative of the Legal Aid Society, which is counsel for plaintiffs, and an official of the Office of Court Compliance, ("OCC"), the administrative agency that monitors the City's compliance with all aspects of the consent decree. At those meetings, the City will detail its efforts and its findings in pursuing a viable alternative to cook/chill. For this plan to be constructive and productive, candor and forthrightness must be the cornerstone of each and every meeting. Following each meeting, OCC will prepare and fax to the Court a brief memorandum that informs the Court of the steps the City is—or is not—taking. On the eighth Thursday, the fifty-sixth day, June 15, 1995, the parties will appear before me in Chambers at 9:30 a.m. with its final report, which will explain exactly which route has been agreed upon and the approvals that have been obtained that will permit the City to execute said plan. Failure to adhere to these deadlines will prompt a reconsideration of the plaintiff's contention that the only response befitting the City's conduct is a contempt citation.

**SO ORDERED.**